**KRUTCIK & GEORGGIN**
A. Nicholas Georggin, Esq. (SBN 170925)
James A. Krutcik, Esq.  (SBN 140550)
26021 Acero
Mission Viejo, CA 92691
(949) 367-8590;    (949) 367-8597 FAX
ngeorggin@kglawoffices.com; jkrutcik@kglawoffices.com

Attorneys for Plaintiffs PAUL O'SULLIVAN, MARIE
BROWN, KEO YANG, SARAH BARSOUM, SIRINE
DALLOUL, HALA HAWA, MONIR HAWA, CONSTANCE
MARGERUM, DIANA BARLETT, YER VANG, and CHERIE
DAVIS, individually, and all those similarly situated,

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL O'SULLIVAN, MARIE BROWN, KEO YANG, SARAH BARSOUM, SIRINE DALLOUL, HALA HAWA, MONIR HAWA, CONSTANCE MARGERUM, DIANA BARLETT, YER VANG, and CHERIE DAVIS, individually, and all those similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>DIAMOND PARKING, INC. , a Washington Corporation; DIAMOND PARKING SERVICES, LLC, a Washington Limited Liability Company; and DOES 1 through 500, inclusive,<br><br>　　　　　　　Defendants. | CASE NO.  C 07-03389 VRW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF:**<br><br>**1)　CLASS SETTLEMENT;**<br>**2)　CERTIFICATION OF CLASS;**<br>**3)　NOTICE TO CLASS MEMBERS;**<br>**4)　INCENTIVE PAYMENTS;**<br>**5)　CLASS ADMINISTRATOR; and**<br>**6)　CLASS COUNSEL'S FEES/COSTS**<br><br>**DATE:　　　　August 21, 2008**<br>**TIME:　　　　2:30 p.m.**<br>**COURTROOM:　6**<br><br>[Federal Rules of Civil Procedure, rule 23(e), et seq.]<br><br>**(Declaration of A. Nicholas Georggin, Esq.; and [Proposed] Order Granting Preliminary Approval of Class Action Settlement filed and served concurrently herewith)** |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS**

**OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 21, 2008, at 2:30p.m., in Courtroom No. 6 of the

United States District Court, Northern District of California located at 450 Golden Gate Ave., San

Francisco, California, Employee-Plaintiffs, PAUL O'SULLIVAN, MARIE BROWN, KEO YANG, SARAH BARSOUM, SIRINE DALLOUL, HALA HAWA, MONIR HAWA, CONSTANCE MARGERUM, DIANA BARLETT, YER VANG, and CHERIE DAVIS, individually, and on behalf of all persons similarly situated, (hereinafter collectively "PLAINTIFFS"), will move this Court for the Preliminary Approval of Class Action Settlement. In conjunction with Defendants, DIAMOND PARKING, INC. , a Washington Corporation; DIAMOND PARKING SERVICES, LLC, a Washington Limited Liability Company, (hereinafter "DIAMOND PARKING"), PLAINTIFFS request the Court execute, issue and enter an Order granting Preliminarily Approval of PLAINTIFFS'/DIAMOND PARKING's Settlement.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of A. Nicholas Georggin, Esq., all files and records in this case, and upon any other evidence the Court deems appropriate. Pursuant to Federal Rules of Civil Procedure, rule 23(e), PLAINTIFFS and DIAMOND PARKING request this Court to execute, issue and enter an Order Granting: 1) preliminary approval of the proposed Settlement; 2) Certification of Class Action for settlement purposes; 3) approval of the proposed Notice of Settlement and Claim Form; 4) preliminary approval of the incentive payments to the named Plaintiffs; 5) approval of the Class Administrator; and 6) preliminary approval of Class Counsel's attorneys' fees and costs.

DATE: June 4, 2008                                    **KRUTCIK & GEORGGIN**


By _____
James A. Krutcik, Esq.
A. Nicholas Georggin, Esq.
Attorneys for Plaintiffs

<u>TABLE OF CONTENTS</u>

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF LAWSUIT AND CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. THE MATERIAL TERMS OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A) The Settlement Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B) DIAMOND PARKING's Settlement Payment Obligations . . . . . . . . . . . . . . . . . . . 3

    C) Proposed Incentive Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D) Class Counsel's Attorneys' Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    E) Notice, Objection and Validity of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    F) Critical Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    G) Release of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND
    SHOULD BE PRELIMINARILY APPROVED BY THE COURT . . . . . . . . . . . . . . . . . . 5

    A) The Settlement is Fair to Class Members Because it Reflects a Reasonable Balance
        Between the Risks of Litigation with the Value of an Immediate Settlement . . . . . . . 7

    B) The Settlement is the Result of Serious, Informed, Arm's-Length Negotiations Before
        Mediator Michael J. Loeb, Esq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C) Payment to the Named Plaintiffs as Class Representatives is
        Fair and Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D) The Notice Satisfies the Requirements of Due Process . . . . . . . . . . . . . . . . . . . . . 11

    E) The Claim Form is Easy, Non-Intrusive and Aids Class Participation . . . . . . . . . . . 12

V. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT SHOULD BE
    GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A) PLAINTIFFS' Claims are Sufficiently Numerous . . . . . . . . . . . . . . . . . . . . . . . . 13

    B) Common Questions of Law and Fact Predominate the Claims . . . . . . . . . . . . . . . . 14

    C) The Class Representatives' Claims Are Typical . . . . . . . . . . . . . . . . . . . . . . . . . 15

    D) The Class Representatives Adequately Represent the Interests of the Class . . . . . . . 15

    E) The Class Action is the Superior Method of Litigating the Case . . . . . . . . . . . . . . 16

VI.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION COSTS ...................................................... 17

VII.  CONCLUSION ...................................................... 20

TABLE OF AUTHORITIES

CASES

Abby v. City of Detroit (D. Mich. 2003) 218 F.R.D. 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Allapattah Services, Inc. v. Exxon Corporation (S.D. Fla. 2006) 454 F.Supp.2d 1185 . . . . . . . . . .  10

Amchem Products, Inc. v. Windsor (1997) 521 U.S. 591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

American Finance System, Inc. v. Harlow (D. Md. 1974) 65 F.R.D. 94 . . . . . . . . . . . . . . . . . . . . . .  14

Blum v. Stenson (1984) 465 U.S. 886 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Boeing Co. v. Van Gemert (1980) 444 U.S. 472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Buford v. H & R Block (D. Ga. 1996) 168 F.R.D. 340 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Camden I Condo Ass'n, Inc. v. Dunkle (11th Cir. 1991) 946 F.2d 768 . . . . . . . . . . . . . . . . . . . . .  18

Chemical Bank v. City of Seattle (9th Cir. 1994) 19 F.3d 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Class Plaintiffs v. City of Seattle (9th Cir. 1992) 955 F.2d 1268 . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

Epstein v. Weiss (D. La. 1970) 50 F.R.D. 387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Esplin v. Hirschi (2d Cir. 1968) 402 F.2d 94 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Franklin v. Kaypro Corp. (9th Cir. 1989) 884 F.2d 1222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Gaddis v. Wyman (D.N.Y. 1969) 304 F. Supp. 713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

General Telephone Co. of Southwest v. Falcon (1982) 457 U.S. 147 . . . . . . . . . . . . . . . . . . . . . . .  16

Gould v. Md. Sound Indus. (1995) 31 Cal. App. 4th 1137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Harris v. Palm Springs Alpine Estates, Inc. (9th Cir. 1964) 329 F.2d 909 . . . . . . . . . . . . . . . . . . .  14

Harriss v. Pan American World Airways, Inc. (N.D. Cal. 1977) 74 F.R.D. 24 . . . . . . . . . . . . . . . .  13

Ingram v. The Coca-Cola Co. (N.D. Ga. 2001) 200 F.R.D. 685 . . . . . . . . . . . . . . . . . . . . . . . . . .  10

In re Activision Sec. Litigation (D. Cal. 1989) 723 F. Supp. 1373 . . . . . . . . . . . . . . . . . . . . . . . .  18, 19

In Re Dun & Bradstreet Credit Services Customer Litigation

        (S.D. Ohio 1990) 130 F.R.D. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig. (3d Cir. 1995) 55 F.3d 768 . . . . . . . . . . .  8

In re Lease Oil Antitrust Litig. (D. Tex. 1999) 186 F.R.D. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

In re Michael Milken & Assocs. Sec. Litig. (D.N.Y. 1993) 150 F.R.D. 46 . . . . . . . . . . . . . . . . . . .  6, 7

In Re: NASDAQ Market Makers Antitrust Litigation (S.D. NY 1997) 176 F.R.D. 99 . . . . . . . . . . .  6

1  In re Prudential Sec. Inc. Ltd. Pshps. Litig. (D.N.Y. 1995) 163 F.R.D. 200 . . . . . . . . . . . . . . . . . . . 6

2  In Re Thirteen Appeals Arising Out Of the San Juan Dupont Plaza Hotel Fire Litigation

3       (1st Cir. 1995) 56 F.3d 295 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4  Jenkins v. Massinga (D. Md. 1984) 592 F. Supp. 480 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5  Kuhn v. Philadelphia Electric Co. (D. Pa. 1978) 80 F.R.D. 681 . . . . . . . . . . . . . . . . . 14

6  Langbecker v. Elec. Data Sys. Corp. (5th Cir. 2007) 476 F.3d 299 . . . . . . . . . . . . . . . . . . . . . . . 13

7  Molski v. Gleich (9th Cir. 2003) 318 F.3d 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8  Murray v. Auslander (11th Cir. 2001) 244 F.3d 807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9  Pacific Fire Ins. Co. v. Reiner (D. La. 1942) 45 F. Supp. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10  Paul, Johnson, Alston & Hunt v. Graulty (9th Cir. 1989) 886 F.2d 268 . . . . . . . . . . . . . . . . . . . . . 17

11  Petralia v. Jercich (9th Cir. 2001) 238 F.3d 1202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12  Philadelphia Electric Co. v. Anaconda American Brass Co. (E.D. Pa. 1967) 42 F.R.D. 324 . . . . . . 11

13  Phillips Petroleum Co. v. Shutts (1985) 472 U.S. 797 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14  Principe v. Ukropina (9th Cir. 1995) 47 F.3d 373 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15  Putnam v. Davies (D. Ohio 1996) 169 F.R.D. 89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16  Rosario v. Livaditis (7th Cir. 1992) 963 F.2d 1013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

17  Rothman v. Gould (S.D.N.Y. 1971) 52 F.R.D. 494 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18  Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n

19       (E.D. Pa. 1975) 66 F.R.D. 581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

20  Staton v. Boeing Co. (9th Cir. 2003) 327 F.3d 938 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

21  United Nat'l Records, Inc. v. MCA, Inc. (D. Ill. 1984) 101 F.R.D. 323 . . . . . . . . . . . . . . . . . . . . 16

22  Van Bronkhorst v. Safeco Corp. (9th Cir. 1976) 529 F.2d 943 . . . . . . . . . . . . . . . . . . . . . . . . . 8

23  Van Vranken v. Atlantic Richfield Co. (N.D. Cal. 1995) 901 F. Supp. 294 . . . . . . . . . . . . . . . . . . . 10

24  Wagner v. NutraSweet Co. (D. Ill. 1997) 170 F.R.D. 448 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

25  Washington v. Wyman (D.N.Y. 1971) 54 F.R.D. 266 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26  Wing v. Asarco, Inc. (9th Cir. 1997) 114 F.3d 986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

27  Williams v. Vukovich (6th Cir. 1983) 720 F.2d 909 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

28  Zucker v. Occidental Petroleum Corp. (D. Cal. 1997) 968 F. Supp. 1396 . . . . . . . . . . . . . . . . . . 17

1

STATUTES & RULES

Federal Rules of Civil Procedure, Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rules of Civil Procedure, Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Federal Rules of Civil Procedure, Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedure, Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Civil Procedure, Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Civil Procedure, Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rules of Civil Procedure, Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

Federal Rules of Civil Procedure, Rule 23(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

Federal Rules of Civil Procedure, Rule 23(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rules of Civil Procedure, Rule 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Federal Rules of Civil Procedure, Rule 23(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rules of Civil Procedure, Rule 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 20

OTHER AUTHORITIES

Coffee, Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions (1986) 86 Colum. L.Rev. 669, 691 . . 19

Issacharoff, Class Action Conflicts (1997) 30 U.C. Davis L.Rev. 805 . . . . . . . . . . . . . . . . . . . . . 19

Leubsdorf, The Contingency Factor in Attorney Fee Awards (1981) 90 Yale L.J. 473 . . . . . . . . . . 19

Macey & Miller, The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform (1991) 58 U.Chi. L.Rev. 1 . . . . . . . . . . . . . . . . . . . . . 19

Silver, Unloading the Lodestar: Toward a New Fee Award Procedure (1992) 70 Tex. L.Rev. 865 . 19

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION.

The instant Motion involves the proposed settlement of a state-wide wage and hour class action lawsuit brought by California, Employee-Plaintiffs, PAUL O'SULLIVAN, MARIE BROWN, KEO YANG, SARAH BARSOUM, SIRINE DALLOUL, HALA HAWA, MONIR HAWA, CONSTANCE MARGERUM, DIANA BARLETT, YER VANG, and CHERIE DAVIS, individually, and on behalf of all persons similarly situated, (hereinafter collectively "PLAINTIFFS") against California employer DIAMOND PARKING, INC. , a Washington Corporation; DIAMOND PARKING SERVICES, LLC, a Washington Limited Liability Company, (hereinafter "DIAMOND PARKING") which is venued in the United States District Court for the Northern District of California.  The action seeks overdue and unpaid earned wages, overtime wages, minimum wages, statutory wages, associated statutory penalties, pre-judgment interest and attorneys' fees for DIAMOND PARKING's alleged violations of California wage and hour law.  PLAINTIFFS respectfully submit this Memorandum of Points and Authorities in support of their Motion for Preliminary Approval of Class Action Settlement ("SETTLEMENT" or "AGREEMENT") as well as preliminary approval of all related SETTLEMENT terms and procedures.

In conjunction with DIAMOND PARKING, PLAINTIFFS move the Court to enter an Order Granting: 1) preliminary approval of the proposed Settlement; 2) Certification of Class Action for settlement purposes; 3) approval of the proposed Notice of Settlement and Claim Form; 4) preliminary approval of the incentive payments to the named Plaintiffs; 5) approval of the Class Administrator; and 6) preliminary approval of attorneys' fees and costs for class counsel.  Upon this Court's Preliminary Approval, and after Notice to the members of the class and after administration of the claims, Class Counsel will move the Court for entry of a Final Judgment and Order of Dismissal of the Action, with the Court retaining jurisdiction over the parties to enforce the terms of the SETTLEMENT.

/ / /

/ / /

/ / /

## II.     SUMMARY OF LAWSUIT AND CLAIMS.

This litigation involves a state-wide wage and hour class action against DIAMOND PARKING which is currently venued in the United States District Court for the Northern District of California. PLAINTIFFS and the 527 putative class members are current and former employees of DIAMOND PARKING. PLAINTIFFS claim that DIAMOND PARKING allegedly violated California law by failing to provide required meal/rest-breaks, failing to pay all wages due upon termination of employment, requiring employees to work off-the-clock, and not paying required overtime premium pay. PLAINTIFFS filed a lengthy and detailed complaint seeking recovery for overdue and unpaid earned wages, overtime wages, minimum wages, statutory wages, and associated civil penalties, pre-judgment interest and attorneys' fees for wage related sums.

PLAINTIFFS claim that DIAMOND PARKING intentionally under-staffs its locations so that employees are forced to work long hours without proper compensation or proper rest breaks and/or meal periods.  As a result of these and other labor violations, PLAINTIFFS allege that DIAMOND PARKING's non-exempt hourly employees were not provided rest-breaks, meal periods, and overtime premium pay as required by California law.  PLAINTIFFS also allege that many employees were required to work off-the-clock, depriving employees of minimum wages.  At the conclusion of an employees' employment, DIAMOND PARKING was obligated to tender timely payment of all wages due to PLAINTIFFS.  Despite DIAMOND PARKING's apparent efforts for payment of final wages, PLAINTIFFS allege that payment did not occur in the timely manner required by California law.

PLAINTIFFS investigated the claims by interviewing present and former employees; reviewing employee time records and employment files; and reviewing DIAMOND PARKING's payroll and employment records. PLAINTIFFS assert DIAMOND PARKING's violations are wide-spread and that "late-pay" violations ranged from a few days to over 30-days.  DIAMOND PARKING vigorously denies all of PLAINTIFFS' allegations.

## III.     THE MATERIAL TERMS OF THE SETTLEMENT.

The settlement of this case was reached after a vigorous litigation and mediation process. The parties engaged in detailed negotiations involving all party pre-mediation discussions, and a lengthy

mediation session before Mediator, Michael J. Loeb, Esq.  The settlement negotiations also included numerous telephone conferences, and attorney/client discussions.  Mediator Loeb assisted in bridging the settlement gap, finalizing the settlement terms, and endorsing the settlement.  After the settlement was reached, a Memorandum of Understanding was executed to memorialize the settlement terms.

**A)    The Settlement Class:**  For purposes of Preliminary Approval, the Settlement Class shall consist of all individuals who were employed by DIAMOND PARKING in the State of California, and who worked as non-exempt hourly employees of DIAMOND PARKING during the period from May 21, 2003 through August 21, 2008.

**B)    DIAMOND PARKING's Settlement Payment Obligations:**  To or for the benefit of the Final Settlement Class (estimated at 527 current and former employees), DIAMOND PARKING shall pay a maximum total settlement as follows:

1.    DIAMOND PARKING agrees to pay the Settlement Amount of Eight Hundred Fifty Six Thousand Dollars ($856,000.00), which includes all payments to Class Members. ("SETTLEMENT AMOUNT").

2.    DIAMOND PARKING has estimated that 527 present and former employees worked in California as non-exempt employees from May 21, 2003 to September 27, 2007.  In the event the number of Class Members exceeds 600 during that time period, the SETTLEMENT AMOUNT will be increased on a pro rata basis.

3.    PLAINTIFFS agree that if more than five percent (5%) of Class Members "opt-out" of the Settlement, DIAMOND PARKING may revoke the SETTLEMENT.

4.    Also included in the SETTLEMENT AMOUNT and subject to the Court's approval, DIAMOND PARKING agrees that the following attorneys' fees, costs, and incentive awards to the named Plaintiffs are fair and reasonable:

|   |   |   |
|---|---|---|
| a. | Attorneys' fees and costs of litigation: | $256,800 |
| b. | Administration costs (estimated): | $ 25,000 |
| c. | Incentive awards to the named plaintiffs: | $ 72,500 |
| d. | Estimated Class Payout Amount: | $501,700 |

/ / /

1  **C)    Proposed Incentive Payments:**  The proposed incentive payments to each Named

2  Plaintiff, subject to the Court's approval, are as follows: Paul O'Sullivan $11,000, Marie Brown

3  $10,000, Keo Yang $750, Sarah Barsoum $5,000, Sirine Dalloul $5,000, Hala Hawa $10,000, Monir

4  Hawa $7,500, Diana Bartlett $7,500, Yer Vang $750, Cherie Davis $5,000, and Constance Margerum

5  $10,000.

6  These incentive payments are made in recognition of the substantial risk taken by the named

7  Plaintiffs in representing the Class and the benefits conferred on Class Members as well as to

8  compensate each named Plaintiff for their time and their exposure to potential financial risks.  The

9  incentive payments also reflect California's strong public policy in favor of timely payment of wages

10  to employees as well as serving as a means of encouragement to all employees to take the necessary

11  steps for the enforcement of the proper payment of wages.  Finally, the incentive awards compensate

12  the named Plaintiffs for executing a general release of all claims against DIAMOND PARKING that

13  were asserted, or could have been asserted, in this litigation.

14  **D)    Class Counsel's Attorneys' Fees and Costs.**    In further endorsement of the

15  SETTLEMENT, DIAMOND PARKING agrees that the proposed payment of $256,800 for attorneys'

16  fees and reimbursement of litigations costs to Krutcik & Georggin is fair and reasonable.  The attorneys'

17  fees and costs of litigation allocated as part of the SETTLEMENT to Krutcik & Georggin are set forth

18  in the AGREEMENT, subject to Court approval.  The attorneys' fees and costs of litigation comprise

19  approximately thirty percent of the total SETTLEMENT AMOUNT in this case, and include all of the

20  litigation costs incurred by class counsel.  This amount compensates class counsel for litigation and

21  investigation costs commencing over eight months before the May 21, 2007 Complaint was filed.  It

22  also includes costs of discovery, court filings, court appearances and mediation with Michael J. Loeb,

23  Esq.

24  **E)    Notice, Objection and Validity of Claim.**  The AGREEMENT obligates DIAMOND

25  PARKING to provide the Class Administrator ("ADMINISTRATOR") with a list of class members

26  with last-known identification detail, including first/last name, mailing address, telephone number and

27  social security number.   Upon receipt, the ADMINISTRATOR will immediately obtain updated

28  forwarding addresses from the U.S. Postal Service. The ADMINISTRATOR shall then send the Class

1   Notice and Claim Forms via First Class mail.   For each Notice which is timely returned as

2   "undeliverable", the ADMINISTRATOR will attempt to determine a correct address using a computer

3   search, and will re-send the Class Notice and Claim Form via First Class mail to the new address. For

4   those Claim forms that are timely received, but deemed defective by the ADMINISTRATOR, a prompt

5   First Class re-mailing of a new Notice and Claim form will be made. Class Members will have 30 days

6   to respond to the first mailing, or 15 days in the event a second mailing is necessary.

7   Additionally, no later than 20 days after the initial mailing of the Class Notice and Claim Form,

8   the ADMINISTRATOR shall mail a reminder notice of distinctive design and/or color to all Class

9   Members who have not submitted a Claim Form.  The reminder notice shall advise the Class Members

10   that a Claim Form has not been received and encourage their participation in the SETTLEMENT. The

11   validity of each claim will be determined by the date postmarked on the returned Claim Form.  As

12   required by Federal Rules of Civil Procedure, rule 23(c), the Notice contains an explanation of the

13   proposed settlement, the procedures for class members' objections and the information/election to

14   appear at the final settlement hearing.

15   **F)   Critical Dates.**  The Class Notice will clearly provide Class Members with an outline

16   of "Critical Dates".  The Notice gives date information on: 1) Mailing the Claim Form; 2) Requesting

17   exclusion from the SETTLEMENT ("opt-out"); 3) Filing objections; and 4) Appearing at the Final

18   Approval Hearing.

19   **G)   Release of Claims**.  The Notice clearly informs Class Members that they are releasing

20   all "wage and hour" claims against DIAMOND PARKING that were asserted, or could have been

21   asserted, in this litigation in exchange for payment from the SETTLEMENT.

22

23   **IV.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND**

24   **SHOULD BE PRELIMINARILY APPROVED BY THE COURT.**

25   As a matter of public policy, courts both encourage the use of the class action device, and favor

26   settlement over continued litigation – particularly in complex cases. See Principe v. Ukropina (9th Cir.

27   1995) 47 F.3d 373, 378; Class Plaintiffs v. City of Seattle (9th Cir. 1992) 955 F.2d 1268, 1276.  The

28   traditional means for handling claims like those at issue here – individual litigation – would overburden

1  the court system, require a massive expenditure of public and private resources, and given the relatively

2  small value of the claims of the individual Class Members, would be wholly impracticable in light of

3  the costs of litigation. To assure fairness, however, a class action may not be settled, dismissed or

4  compromised without the Court's approval. Fed. R. Civ. P., rule 23(e). Parties who propose to resolve

5  class action litigation through a class-wide settlement must obtain the Court's approval of the proposed

6  settlement pursuant to a three-step process. The three steps are:

7      1.    Preliminary approval of the proposed settlement;

8      2.    Notice of the proposed settlement given to all affected Class Members; and

9      3.    A final approval hearing, at which Class members and settling parties may be heard and

10  where the Court determines the fairness, reasonableness and adequacy of the settlement. Fed. R. Civ.

11  P., rule 23(e); Williams v. Vukovich (6th Cir. 1983) 720 F.2d 909, 920-921; In Re: NASDAQ Market

12  Makers Antitrust Litigation (S.D. NY 1997) 176 F.R.D. 99, 101.

13      PLAINTIFFS request that the Court take the first step in the settlement approval process by

14  entering an Order Granting: 1) preliminary approval of the proposed Settlement; 2) Certification of the

15  Class Action for settlement purposes; 3) approval of the proposed Notice of Settlement and Claim

16  Form; 4) preliminary approval of the incentive payments to the named Plaintiffs; 5) approval of the

17  Class Administrator; and 6) preliminary approval of attorneys' fees and costs for class counsel.

18      The ultimate approval of a class action settlement depends on whether the settlement is fair,

19  adequate and reasonable. Class Plaintiffs v. City of Seattle (9th Cir. 1992) 955 F.2d 1268, 1276; Molski

20  v. Gleich (9th Cir. 2003) 318 F.3d 937, 953. At the stage of preliminary approval, however, the Court

21  must only decide whether the proposed settlement is possibly fair, reasonable and adequate. In re

22  Prudential Sec. Inc. Ltd. Pshps. Litig. (D.N.Y. 1995) 163 F.R.D. 200, 209. The inquiry rests on whether

23  the settlement is in the range of reasonableness in the eyes of the Court. In re Michael Milken &

24  Assocs. Sec. Litig. (D.N.Y. 1993) 150 F.R.D. 46, 54. If a proposed class action settlement discloses

25  grounds to doubt its fairness or reasonableness, then preliminary approval is denied. Ibid. When a

26  proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no

27  obvious deficiencies and falls within range of possible approval, preliminary approval is granted. In

28  re NASDAQ Market-Makers Antitrust Litig. (S.D.N.Y. 1997) 176 F.R.D. 99, 101.

1  Here, the proposed settlement reflects a balance of the risks and costs of continued litigation

2  with the value of an immediate settlement.  PLAINTIFFS and DIAMOND PARKING engaged in

3  comprehensive pre-mediation exchange of information and data, participated in a pre-mediation

4  conference with Mediator Michael Loeb, and finally agreed to resolution after over 12 hours of

5  intensive negotiations during mediation.  The resolution occurred as a result of "arms-length

6  negotiations" and should be preliminarily approved.

7  **A)  The Settlement is Fair to Class Members Because it Reflects a Reasonable Balance**

8  **Between the Risks of Litigation with the Value of an Immediate Settlement.**

9  To determine the fairness of a proposed settlement the court may consider the value of the

10 proposed settlement in light of the potential recovery and the ability of the settling parties to withstand

11 a greater judgment. In re Michael Milken & Assocs. Sec. Litig., *supra,* 150 F.R.D. at p. 54.  In its

12 preliminary assessment of the fairness of the proposed agreement, the Court must determine that the

13 agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential

14 outcome and the costs of litigation. Williams v. Vukovich (6th Cir. 1983) 720 F.2d 909, 922-23.  In

15 so doing, the Court should consider the risk, expense, complexity, and likely duration of litigation; the

16 strength of Plaintiffs' case; the amount offered in settlement and the experience and views of counsel.

17 Ibid.

18 California courts and legislatures have long recognized that workers as a group are a

19 disadvantaged class in need of special protections to insure that they promptly receive the wages to

20 which they are entitled.  Particularly, it is well settled that the prompt payment of wages due to an

21 employee is a fundamental public policy of California. Petralia v. Jercich (9th Cir. 2001) 238 F.3d 1202,

22 1206 citing Gould v. Md. Sound Indus. (1995) 31 Cal.App.4th 1137, 1147.  California courts have

23 explained that:

24 "Wages are not ordinary debts.  Because of the economic position of the average worker
   . . . . it is essential to the public welfare that he receive his pay promptly.  Thus the

25 prompt payment of wages serves society's interest through a more stable job market, in
   which its most important policies are safeguarded." Petralia, supra, 238 F.3d at p. 1207

26 citing Gould, supra, 31 Cal.App.4th at p. 1147.

27 This policy is particularly weighty in class action cases, like the instant litigation.  There is an overriding

28 public interest in settling and quieting litigation, particularly in class action suits. Franklin v. Kaypro

1  Corp. (9th Cir. 1989) 884 F.2d 1222, 1229; Van Bronkhorst v. Safeco Corp. (9th Cir. 1976) 529 F.2d

2  943, 950.  Settlement of class actions are encouraged because they consume substantial judicial

3  resources and present unusually large risks for litigants.  In re GMC Pick-Up Truck Fuel Tank Prods.

4  Liab. Litig. (3d Cir. 1995) 55 F.3d 768, 805.

5       To reach the SETTLEMENT AMOUNT, the parties conducted pre-mediation conferences and

6  vigorously mediated the case in Los Angeles with Mediator, Michael J. Loeb, Esq., a respected labor

7  and employment attorney and mediator.  Both formal and informal investigation took place to evaluate

8  alleged wage and hour violations.  PLAINTIFFS' counsel has extensive experience litigating complex

9  civil litigation cases (both class and non-class types), including "wage and hour" class action cases to

10 effectuate the purposes of California's wage protection statutes.  (See Declaration of A. Nicholas

11 Georggin, Esq. filed/served concurrently herewith.)  PLAINTIFFS' counsel's education, experience and

12 background provide a proper foundation to prosecute this case and manage settlement on behalf of

13 PLAINTIFFS. As discussed more fully below, PLAINTIFFS' counsel spent numerous hours reviewing

14 time cards, payroll records, termination records and copies of final pay records in order to reach a

15 calculation of alleged potential damages attributable to DIAMOND PARKING. The evaluation of this

16 evidence allowed Mediator Loeb to move the parties towards settlement amount based on a compromise

17 of the respective liability positions.

18      The SETTLEMENT will provide PLAINTIFFS with substantial relief in the form of individual

19 monetary payments and prospective relief to ensure that DIAMOND PARKING pays employees

20 properly in the future.  Settlement assures PLAINTIFFS of an immediate tangible benefit, with an end

21 to the contested dispute. If litigation continues, there would be no guarantee of the same outcome as the

22 SETTLEMENT reached through mediation. The rule of law in the wage/hour area is dynamic and ever-

23 changing, and provides for some uncertainty in litigation.  Many unresolved legal issues and

24 uncertainties would force the parties to litigate at trial and through the appellate process.  While

25 PLAINTIFFS vigorously support the merits of their case, there are legal interpretations of factual

26 evidence that could be adverse to class members that would significantly reduce recovery.  The same

27 is true for DIAMOND PARKING because the legal and factual uncertainties could greatly increase its

28 exposure at trial.  Many wage issues are untested and the outcome is not predictable.  Typically, the

1  magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes

2  of the jury. Further, the passage of time associated with the appellate process may cause PLAINTIFFS

3  to lose qualifying class members in this highly transient class. Taking these uncertainties for both sides

4  into account, the parties reached a reasonable settlement on behalf of the Class.

5      The Settlement avoids the many legal and factual delays and obstacles that may prevent

6  PLAINTIFFS from obtaining any monetary relief. It also satisfies California's public policies to

7  promptly pay wages to workers and encourage the settlement of class actions. All parties present at

8  mediation believe the resulting Settlement to be fair, adequate and reasonable in light of the potential

9  risks to both sides should litigation continue.

10      **B)    The Settlement is the Result of Serious, Informed, Arm's-Length Negotiations**

11      **Before Mediator Michael J. Loeb, Esq.**

12      Courts recognize that a settlement must be reached through arm's-length negotiations to prevent

13  collusion between plaintiffs and defendants in settling class actions to detriment of absent class

14  members. Jenkins v. Massinga (D. Md. 1984) 592 F. Supp. 480, 491. In this case, the proposed

15  settlement is the result of intensive, arm's-length negotiations with Mr. Loeb and experienced attorneys

16  who are highly familiar with the legal and factual issues of this case. Settlement negotiations took place

17  in Los Angeles, California. Present at the mediation session for PLAINTIFFS were named Plaintiffs

18  Paul O'Sullivan, Marie Brown, Sarah Barsoum, Sirine Dalloul, Hala Hawa, Monir Hawa, Constance

19  Margerum, Diana Bartlett, and Cherie Davis.

20      Mr. Loeb's considerable experience as a mediator and labor and employment attorney provided

21  experience and insight that brought the parties to settlement terms in this case. In negotiating the

22  Settlement, PLAINTIFFS' counsel evaluated, summarized and compiled various records from

23  DIAMOND PARKING covering the entire class period. These records involved time cards, payroll

24  records, termination records and copies of final pay records. PLAINTIFFS' counsel also reviewed

25  employment data and interviewed current and former DIAMOND PARKING employees. The evidence

26  was evaluated in a comprehensive spreadsheet. Mr. Loeb and the parties utilized the results of

27  PLAINTIFFS' discovery and spreadsheets frequently during mediation to support and explain the basis

28  for PLAINTIFFS' claims and to evaluate recoveries, risks and possible outcomes.

Mr. Loeb's considerable experience as a mediator and attorney provided experience and insight that brought the parties to settlement terms in this case. The proposed SETTLEMENT resulted from an intensive day of arm's-length negotiations with Mr. Loeb and experienced attorneys who are highly familiar with the legal and factual issues of this case, in addition to general/corporate counsel representatives from DIAMOND PARKING. The parties utilized PLAINTIFFS' discovery and electronic compilation frequently during mediation to support and explain the basis for PLAINTIFFS' claims and DIAMOND PARKING's defenses and to evaluate recoveries, risks and possible outcomes. The resolution occurred as a result of over many hours of "arms length negotiations" with Mediator Loeb and should be approved.

**C)    Payment to the Named Plaintiffs as Class Representatives is Fair and Reasonable.**

"Incentive awards" are given to compensate class representatives for their time, effort, and inconvenience. See e.g., In Re Dun & Bradstreet Credit Services Customer Litigation (S.D. Ohio 1990) 130 F.R.D. 366, 373-374; In re Lease Oil Antitrust Litig.(D. Tex. 1999) 186 F.R.D. 403, 449. Moderate incentive awards, which serve as premiums over and above any claims-based recovery from the Settlement Fund, are routine and proper, and promote the public policy of encouraging individuals to undertake the commitment and responsibility of representative lawsuits. Ingram v. The Coca-Cola Co. (N.D. Ga. 2001) 200 F.R.D. 685, 694. Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provide and the risks they incur during the course of the class action litigation. Incentive awards can range from several hundred to many thousands of dollars. For example, in Ingram v. The Coca-Cola Co. the Court approved incentive awards of $300,000 for each person who executed an affidavit, in recognition of contribution to litigation that entailed risk and effort.[1] Incentive awards are justified by the increased duties, inconvenience, and risk undertaken by the Class Representatives.

Subject to Court approval, DIAMOND PARKING has agreed that the named Plaintiffs, as Class Representatives, have earned an incentive payment as follows: Paul O'Sullivan $11,000, Marie Brown

---

[1] *Ingram v. The Coca-Cola Co.* (N.D. Ga. 2001) 200 F.R.D. 685, 694; see also *Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F. Supp. 294, 299 - approving $50,000 participation award; and *Allapattah Services, Inc. v. Exxon Corporation* (S.D. Fla. 2006) 454 F. Supp. 2d 1185, 1218 - approving $1,766,666 incentive award.

CASE NO. C 07-03389 VRW

1  $10,000, Keo Yang $750, Sarah Barsoum $5,000, Sirine Dalloul $5,000, Hala Hawa $10,000, Monir

2  Hawa $7,500, Diana Bartlett $7,500, Yer Vang $750, Cherie Davis $5,000, and Constance Margerum

3  $10,000.    On behalf of the unnamed Class members, the Class Representatives assisted in the

4  investigation and preparation of the case, traveled to and engaged in a mediation in Los Angeles, and

5  subjected themselves to other burdens and litigation obligations on behalf of the unnamed members.

6  For example, each named PLAINTIFF endured scrutiny into their wage claims, encountered reviews

7  of their qualifications as class representatives and experienced litigation pressures on behalf of hundreds

8  of employees.    The named PLAINTIFFS are also required to execute a general release of all claims

9  against DIAMOND PARKING that were asserted, or could have been asserted, in this litigation.

10  Without question, these named PLAINTIFFS earned their incentives.

11          **D)      The Notice Satisfies the Requirements of Due Process.**

12          Federal Rules of Civil Procedure, rule 23(c) governs the management of class actions, including

13  the requirement of class "Notice".    From the time of filing of a complaint as a class action until the

14  Federal Rules of Civil Procedure, rule 23(c)(1) determination by the court, an action is assumed to be

15  a class action for purposes of dismissal or compromise.    Washington v. Wyman (D.N.Y. 1971) 54

16  F.R.D. 266, 271; Philadelphia Electric Co. v. Anaconda American Brass Co. (E.D.Pa.1967) 42 F.R.D.

17  324, 326.    Additionally, in order to protect the rights of absent class members, the court must provide

18  the best Notice as practicable for a potential class action settlement to Class Members.    See Phillips

19  Petroleum Co. v. Shutts (1985) 472 U.S. 811, 812. Due process "requires that individual notice in [opt-

20  out] actions be given to all class members 'who can be identified through reasonable efforts'." Ibid.

21          Federal Rules of Civil Procedure, rule 23(c)(2)(B) requires the Notice to include:

22          (1)      The nature of the action;

23          (2)      The definition of the class certified;

24          (3)      The class claims, issues, or defenses;

25          (4)      That a class member may enter an appearance through counsel if the member so desires;

26          (5)      That the court will exclude from the class any member who requests exclusion, stating

27                  when and how members may elect to be excluded, and

28          (6)      The binding effect of a class judgment on class members under rule 23(c)(3).

As set forth in the exhibits filed and served herewith, the proposed Notice sets forth all of the required elements and contains all of the information necessary to allow class members to make informed decisions. The Notice includes: an explanation of this wage and hour lawsuit, a definition of the [proposed] certified class, the settlement terms, the instructions for employee awards, the class member's options, information about the settlement approval process in the United States District Court, Northern District, an explanation that the settlement is binding whether favorable or not, a statement of the class member's right to appear, opt-out, or object to the settlement. Also, should additional information be needed, the Notice clearly designates and provides contact information for the Claims Administrator and Counsel. The proposed Notice satisfies the requirements of due process and the specific requirements of Federal Rules of Civil Procedure, rule 23(c)(2)(B).

**E)    The Claim Form is Easy, Non-Intrusive, and Aids Class Participation.**

The Claim form is an easy form, requiring participating Class Members to sign, date, supply the last four digits of their social security number, supply conflicting information, and place it in the U.S. Mail. By supplying only the last four digits of their social security number, the identification of Class Members is verified, without compromising privacy and security concerns. Thus, this settlement procedure, including the claim form, should be approved.

**V.    CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT SHOULD BE GRANTED.**

For purposes of class action settlement under Federal Rules of Civil Procedure, rule 23(e), class action allegations warrant the assumption that putative class is viable. Rothman v. Gould (S.D.N.Y. 1971) 52 F.R.D. 494, 496. However, an action commenced as a class action retains that character only until a court finds otherwise. Gaddis v. Wyman (D.N.Y. 1969) 304 F. Supp. 713, 715. In order to assure the Court that the SETTLEMENT class would satisfy the normal prerequisites for a class action, we discuss the requirements of class certification briefly below.

Four threshold requirements must be met in order to sustain any class action under Federal Rules of Civil Procedure, rule 23(a): (1) numerosity, the class is so numerous that joinder of all members is impracticable, (2) commonality, there are questions of law or fact common to the class, (3)

1  typicality, the claims or defenses of the representative parties are typical of the claims or defenses of

2  the class, and (4) adequacy of representation, the representative parties will fairly and adequately protect

3  the interests of the class. Amchem Prods. v. Windsor (1997) 521 U.S. 591, 613. The party seeking

4  class certification bears the burden of meeting all the Federal Rules of Civil Procedure, rule 23

5  requirements. Langbecker v. Elec. Data Sys. Corp. (5th Cir. 2007) 476 F.3d 299, 306.

6  Once the threshold requirements are met, the class action must also satisfy one of the conditions

7  of Federal Rules of Civil Procedure, rule 23(b). Rule 23(b)(3) requires that a class must meet two

8  requirements beyond the Rule 23(a) prerequisites: (1) predominance, common questions must

9  predominate over any questions affecting only individual members; and (2) superiority, class resolution

10  must be superior to other available methods for the fair and efficient adjudication of the controversy.

11  Amchem Prods. v. Windsor, supra, 521 U.S. at p. 615. Here, PLAINTIFFS claims satisfy the threshold

12  requirements of Rule 23(a) and the class meets the qualifications under Rule 23(b)(3).

13  **A)    PLAINTIFFS' Claims are Sufficiently Numerous.**

14  Numerosity is established when a positive showing is made that, because of the great number

15  of persons similarly to be affected by the sought-for judgment, it is impracticable to bring all parties

16  personally into the suit. This does not mean that the impossibility of so making them parties must be

17  established, but it is sufficient that it be shown that it is extremely difficult or inconvenient to join them.

18  Pacific Fire Ins. Co. v. Reiner (D. La. 1942) 45 F. Supp. 703, 708. Courts generally consider classes

19  involving approximately thirty or more members as being sufficiently numerous to meet the requirement

20  of Rule 23(a). Harriss v. Pan American World Airways, Inc. (D.C. Cal. 1977) 74 F.R.D. 24, 44.

21  In this case, joinder of approximately 527 individual claims would be manifestly impractical.

22  Each class members' individual claim would not likely exceed a few hundred to a few thousand dollars,

23  making it less likely that these members could or would bring claims on their own. Spinning this

24  number of individual cases off for individual litigation would overwhelm the court system and require

25  that costs be incurred by both sides that would exceed the potential recovery of the individual bringing

26  the claim. This class, therefore, easily satisfies the numerosity requirement.

27  / / /

28  / / /

**B)    Common Questions of Law and Fact Predominate the Claims.**

The most common ground for class actions is simply that common questions of law or fact predominate over questions affecting the individual members and, on balance, a class action is superior to other methods available for adjudicating the controversy.    Fed. R. Civ. P. Rule 23(b)(3).    To determine whether common questions "predominate," the trial court must examine whether the class action involves issues that are susceptible to class-wide proof.    Murray v. Auslander (11th Cir. 2001) 244 F.3d 807, 811.    As a general rule, Rule 23(a)(2) does not require that all questions of fact and law be common.    Nor does it require that common questions predominate.    This subdivision requires only that "there are questions of law or fact common to the class".    Kuhn v. Philadelphia Electric Co. (D. Pa. 1978) 80 F.R.D. 681, 684; Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n (E.D. Pa. 1975) 66 F.R.D. 581, 586.    Even if members have sustained separate injuries and damages, it is settled law that commonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.    American Finance System, Inc. v. Harlow (D. Md. 1974) 65 F.R.D. 94, 107.

A determination of predominance, required by Federal Rules of Civil Procedure, rule 23(b)(3), focuses on the number and significance of common, as opposed to individual, issues.    Buford v. H & R Block (D. Ga. 1996) 168 F.R.D. 340, 356.    However, the predominance requirement is not a numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale.    Ibid., citations omitted.    The district court must engage in a qualitative rather than quantitative analysis to ascertain whether the predominance requirement has been satisfied.    Ibid.    It is very possible for a single common issue to be an overriding one in litigation, despite the fact that the suit also entails numerous remaining individual questions.    Ibid.    Even if individual issues exist that must be determined, the class issues will predominate if the complaint alleges a common course of conduct over a period of time, directed against the members of the class and violating common statutory provisions.    Epstein v. Weiss (D. La. 1970) 50 F.R.D. 387, 393 citing Esplin v. Hirschi (2d Cir. 1968) 402 F.2d 94, 100; Harris v. Palm Springs Alpine Estates, Inc. (9th Cir. 1964) 329 F.2d 909, 914.

/ / /

1    Here, PLAINTIFFS common questions include: the timing of final paychecks, whether rest

2  periods and meal periods were provided, whether employees were required to work off-the-clock and

3  whether employees were denied overtime premium pay which predominate over the particular and

4  individual claims of any one class member. The only disparities between the claims of each individual

5  class member will be the amount of damages alleged and amount of recovery claimed after final

6  approval. DIAMOND PARKING makes no concessions there are common questions or that, if there

7  are, they predominate. These issues form the essential underpinnings of all class members' claims to

8  recovery so that the predominance requirement is satisfied.

9          **C)      The Class Representatives' Claims Are Typical.**

10    The purported representative's claim must be "typical" of the claims or defenses of the class.

11  Fed. R. Civ. P., rule 23(a)(3). The typicality requirement insures that the class representative will

12  adequately represent the members of the class by requiring her claims to be sufficiently similar to the

13  claims and defenses of the putative class members. Putnam v. Davies (D. Ohio 1996) 169 F.R.D. 89,

14  94. Like the commonality requirement, however, the named Plaintiffs claims do not have to be

15  identical to the claims and defenses of the other members of the putative class, but there must be a

16  common element of fact or law between the claims. Ibid.

17    Here, the claims of the Class Representatives are identical to those of the purported class and

18  include claims for: late payment of final pay checks; working without required meal and rest periods;

19  working off-the-clock and working without receiving required overtime premium pay. Thus, the class

20  representatives' claims are typical of the entire class.

21          **D)      The Class Representatives Adequately Represent the Interests of the Class.**

22    The adequacy requirement of Federal Rules of Civil Procedure, rule 23(a)(4) has three elements:

23  (1) the chosen class representative cannot have antagonistic or conflicting claims with other members

24  of the class; (2) the named representative must have a sufficient interest in the outcome to ensure

25  vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified,

26  and generally able to conduct the proposed litigation vigorously. Wagner v. NutraSweet Co. (D. Ill.

27  1997) 170 F.R.D. 448, 451 citing Rosario v. Livaditis (7th Cir. 1992) 963 F.2d 1013, 1018. Parties and

28  their counsel are generally considered to be adequate class representatives if they have no conflicts of

1    interest with the other class members and if the Court is persuaded that counsel will vigorously pursue

2    the action.  General Telephone Co. of Southwest v. Falcon (1982) 457 U.S. 147, 157.

3         In this case, the class representatives retained experienced wage and hour class action attorneys

4    to represent their interests on behalf of class members.  PLAINTIFFS' counsel have significant

5    experience in prosecuting wage and hour cases and have served as counsel in numerous, large and

6    complex wage and hour class actions in California and Federal Courts.  See Declaration of A. Nicholas

7    Georggin, Esq.  PLAINTIFFS' counsel do not have any conflicts of interest with any of the class

8    members.  PLAINTIFFS' counsel are qualified, experienced, and adequate representatives for the

9    purpose of this settlement.

10        Further, the named Plaintiffs have not colluded with DIAMOND PARKING.  The named

11   Plaintiffs have no interests that are antagonistic to or in conflict with the other class members so as to

12   make them inadequate representatives of the class.  The class representatives also participated in the

13   discovery and settlement process, and were involved in negotiating the terms of the settlement through

14   Mr. Loeb.  For all of these reasons, the class members are adequately represented by Class Counsel and

15   the named Plaintiffs.

16        **E)    The Class Action is the Superior Method of Litigating the Case.**

17        In order to satisfy the superiority requirement of Federal Rules of Civil Procedure, rule 23(b)(3),

18   the class action must be superior to, "[a]nd not just as good as, other available methods for handling the

19   controversy".  Abby v. City of Detroit (D. Mich. 2003) 218 F.R.D. 544, 549.  There are four factors

20   pertinent to the superiority inquiry: (1) the interest of members of the class in individually controlling

21   the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

22   controversy already commenced by or against members of the class; (3) the desirability or undesirability

23   of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be

24   encountered in the management of a class action.  Id. at 548; Fed. R. Civ. P., rule 23(b)(3).  In

25   evaluating these factors, the class action device has been found to be superior to other forms of litigation

26   even when some plaintiffs have sizable damage claims.  United Nat'l Records, Inc. v. MCA, Inc. (D.

27   Ill. 1984) 101 F.R.D. 323, 329.  When there is overriding need to remedy common legal grievance and

28   / / /

1   where requiring each class member to establish defendants' liability at separate trial would constitute

2   gross waste of the court's and parties' time and effort, superiority is established. Ibid.

3          In this action, each individual class members' claim for damages amounts is likely not large

4   enough to serve as an incentive to bring an individual suit.  However, even if the amount of damages

5   allocated to one class member are sufficient to encourage an individual suit, requiring each class

6   member to file an individual complaint, conduct separate discovery and individually establish

7   DIAMOND PARKING's liability at trial would waste an unreasonable amount of the Court's time.

8   Establishing that DIAMOND PARKING violated California law in their timing of final paychecks,

9   failure to provide rest periods and meal periods, requirement for employees to work off-the-clock and

10  denying overtime premium pay must only happen once to prove damages for all class members.  As

11  such, in this case the class action device is far superior to any other form of litigation.

12

## VI.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION COSTS.

16         California state and federal courts recognize two methods for evaluating the fairness and

17  reasonableness of attorneys' fees in class action settlements resulting in the creation of a common fund

18  for the distribution to class members: (1) the percentage-of-the-benefit method; or (2) the lodestar

19  method plus multiplier method.  Zucker v. Occidental Petroleum Corp. (D. Cal. 1997) 968 F. Supp.

20  1396, 1400; Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)

21  (9th Cir. 1994) 19 F.3d 1291, 1296; Paul, Johnson, Alston & Hunt v. Graulty (9th Cir. 1989) 886 F.2d

22  268, 272.  While no presumption in favor of either method encumbers the district court's discretion to

23  choose one or the other, when determining attorneys' fees, the district court should be guided by the

24  fundamental principle that fee awards out of common funds be "reasonable under the circumstances."

25  Chemical Bank, supra, 19 F.3d at p. 1296;  Graulty, supra, 886 F.2d at p. 271.  Although the statutes

26  under which the claims in this case were brought contain fee-shifting provisions, the parties settled the

27  case with the creation of a claims procedure that established a common fund, from which counsel will

28  seek an award of attorneys' fees and costs. Staton v. Boeing Co. (9th Cir. 2003) 327 F.3d 938, 972.

1    The criteria for a percentage-based attorneys' fee recovery from a common fund is met where,

2  as here, "each member of a certified class has an undisputed and mathematically ascertainable claim

3  to part of a lump-sum judgment recovered on his behalf." Boeing Co. v. Van Gemert (1980) 444 U.S.

4  472, 479.  In affirming a percentage award of the total sum that class members could receive (rather

5  than what was ultimately claimed), the Court in Boeing Co. reasoned that "a fee awarded against the

6  entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the

7  value of his claim bears to the total recovery." See Wing v. Asarco, Inc. (9th Cir. 1997) 114 F.3d 986,

8  990 - the court approved a percentage-based attorney fee award based on the total amount the class

9  could recover.  "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit

10  without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co.,

11  supra, 444 U.S. 472 at p. 478.

12    The Ninth Circuit has approached the issue of determining fees in common fund cases by using

13  the percentage-of-the-benefit method as the preferred approach. In re Activision Sec. Litigation  (D.

14  Cal. 1989) 723 F. Supp. 1373, 1375.  In explaining the preference towards percentage-of-the-benefit,

15  the Activision Court reasoned that courts, including the Supreme Court, have accepted this policy

16  because the lodestar method "consume[s] an undue amount of court time with little resulting advantage

17  to anyone, but, in fact . . .may be to the detriment of class members." Ibid.; Blum v. Stenson (1984) 465

18  U.S. 886, 900.  Other circuits note that courts have begun a retreat from the lodestar approach due to

19  the advantages of percentage-of-the-benefit method.  See In Re Thirteen Appeals Arising Out Of the

20  San Juan Dupont Plaza Hotel Fire Litigation (1st Cir. 1995) 56 F.3d 295, 307; Camden I Condo Ass'n,

21  Inc. v. Dunkle (11th Cir. 1991) 946 F.2d 768, 774.  "Rather than forcing the judge to review the time

22  records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour

23  expended, the [percentage-of-the-benefit] method permits the judge to focus on a showing that the fund

24  conferring a benefit on the class resulted from the lawyers' efforts." In Re Thirteen Appeals Arising Out

25  Of the San Juan Dupont Plaza Hotel Fire Litigation, supra, 56 F.3d at p. 307, citing Camden I Condo

26  Ass'n, Inc., supra, 946 F.2d at p. 774.

27  / / /

28  / / /

1   In contrast, "by severing the fee award from the settlement's size, [the lodestar] formula

2   facilitates the ability of defendant's and the plaintiff's attorneys to arrange collusive settlements that

3   exchange a low recovery for a high fee award." Coffee, <u>Understanding the Plaintiff's Attorney: The</u>

4   <u>Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative</u>

5   <u>Actions </u>(1986) 86 Colum. L.Rev. 669, 691, fns. omitted; see also Issacharoff, <u>Class Action Conflicts</u>

6   (1997) 30 U.C. Davis L.Rev. 805; Silver, <u>Unloading the Lodestar: Toward a New Fee Award Procedure</u>

7   (1992) 70 Tex. L.Rev. 865; Macey & Miller, <u>The Plaintiffs' Attorney's Role in Class Action and</u>

8   <u>Derivative Litigation: Economic Analysis and Recommendations for Reform </u>(1991) 58 U.Chi. L.Rev.

9   1; Leubsdorf, <u>The Contingency Factor in Attorney Fee Awards </u>(1981) 90 Yale L.J. 473. The courts

10  have observed that the accepted practice of applying the lodestar to common fund cases does not

11  achieve the stated purposes of proportionality, predictability and protection of the class. <u>In re Activision</u>

12  <u>Securities Litigation</u>, supra, 723 F.Supp. at p. 1378. It encourages abuses such as unjustified work and

13  protracted litigation. It adds to the work load of already overburdened district courts. In short, it does

14  not encourage efficiency, but rather, it adds inefficiency to the process. <u>Ibid</u>.

15  PLAINTIFFS' counsel have, through the investment of substantial effort and the resources of

16  attorneys and staff, been able to secure an outstanding settlement on behalf of the Class. Eligible

17  claimants need only execute a claim form in order to receive their monetary recovery. No other

18  justification for the payment of a claim is required.

19  DIAMOND PARKING has vigorously contested liability, the amount of claimed damages, and

20  the propriety of class certification. PLAINTIFFS would have faced significant obstacles proving a

21  state-wide practice by DIAMOND PARKING sufficient for class certification. DIAMOND PARKING

22  would have spared no expense in an attempt to defeat class certification and reduce or eliminate its

23  potential liability. During the extensive settlement discussions before Mr. Loeb, DIAMOND

24  PARKING provided information and argument to counter many of PLAINTIFFS' claims, reducing the

25  prospects for success. DIAMOND PARKING may also challenge any award in favor of PLAINTIFFS

26  through the appellate process, which could delay the payment of outstanding wages by several years.

27  PLAINTIFFS' counsel were able to secure this settlement because of their investigation, reasoning, and

28  combined experience litigating wage and hour cases. The settlement obtained for the class will provide

1    an almost immediate monetary benefit to the class members and vindicate California's important policy

2    of timely paying wages to employees. Additionally, DIAMOND PARKING agrees that PLAINTIFFS'

3    counsel's request for attorneys' fees and costs is fair and reasonable. These facts make the approval of

4    PLAINTIFFS' counsel's request for preliminary approval of attorneys' fees and reimbursement of

5    litigation costs of $256,800 appropriate.

6

7    **VII.    CONCLUSION.**

8        Pursuant to Federal Rules of Civil Procedure, rule 23(e), PLAINTIFFS request this Court

9    execute, issue and enter an Order Granting: 1) preliminary approval of the proposed Settlement; 2)

10   Certification of the Class Action for settlement purposes; 3) approval of the proposed Notice of

11   Settlement and Claim Form; 4) preliminary approval of the incentive payments to the named Plaintiffs;

12   5) approval of the Class Administrator; and 6) preliminary approval of attorneys' fees and costs for class

13   counsel. PLAINTIFFS and DIAMOND PARKING respectfully request that this Court Preliminarily

14   approve Settlement and related terms in this case, and set other Orders as appropriate to effectuate Final

15   Settlement and Final Settlement Approval.

16

17   DATE: June 4, 2008              **KRUTCIK & GEORGGIN**

18

19                     By

20                        A. Nicholas Georggin, Esq.
                          James A. Krutcik, Esq.
                          Attorneys for Plaintiffs

21

22

23

24

25

26

27

28